UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JANE DOE as Next Friend of
A.A., a Minor,

     Plaintiff,

v.

ALEX HELM, in his Official and
Individual capacities,

     Defendants.

Case No. 25-
Hon.

_____/

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com
_____/

## **PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, JANE DOE as Next Friend of A.A., a Minor, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant, ALEX HELM, in his Official and Individual capacities, stating as follows:

## <u>COMMON ALLEGATIONS</u>

1.      That Plaintiff is a resident of the County of Saginaw, State of Michigan and is otherwise domiciled in the State of Michigan.

2.      That Plaintiff is the mother of A.A.

3.      That Defendant Alex Helm is a resident of the County of Saginaw, State of Michigan and is otherwise domiciled in the State of Michigan.

4.      That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

5.      That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      That venue is proper with this Honorable Court pursuant to 28 U.S.C. § 1391.

7.      That at all times material hereto, Birch Run Area Schools employed Defendant Helm as a coach and a long-term substitute teacher.

8.      That Defendant Helm has a history of engaging in inappropriate communication, flirtatious behavior, purchasing gifts, and soliciting photographs and sexual activity with or from underage girls.

9.      That in fact, Defendant Helm sought employment in situations that

would bring him into contact with underage girls, including working as a security guard at an outlet mall where numerous young ladies work in retail, coaching high school or children sports, and substitute teaching.

10.     That prior to Birch Run Area Schools employing Defendant Helm as a long-term substitute teacher and while Defendant Helm was employed as a coach, Defendant Helm engaged in inappropriate behavior with a female student.

11.     That upon information and belief, Defendant Helm participated in inappropriate conversation with said female student.

12.     That Defendant Helm would bring said underage female student snacks and would flirt with her.

13.     That Defendant Helm also discussed said underage female student and whether she had romantic interest in him with male students.

14.     That as an example of such behavior, Defendant Helm sent a male student a video message on SnapChat, stating:

> Nah all seriousness [minor female name redacted] actually think I'm hot lol?

15.     That Defendant Helm was and is a predator of underage women and was placed in a position of authority over students by Birch Run Area Schools.

16.     That A.A. is a minor.

17.     That on or about August 27, 2024, A.A. began her senior year at Birch Run High School.

18.     That one of A.A.'s teachers was Defendant Helm, who was working as a long-term substitute for said school year.

19.     That Defendant Helm began engaging in inappropriate conversation with students, appearing to attempt to ingratiate himself with the students, making it appear he was one of their social group, and discussing romantic or sexual situations so as to make the students comfortable talking about such things with him.

20.     That for example, on one occasion, Defendant Helm bragged to a group of students, including A.A., that he had recently picked up a woman and got her number at Buffalo Wild Wings, attempting to make himself appear desirable and impressive.

21.     That shortly after the school year started, Defendant Helm began grooming a female student, B.B., a minor.

22.     That Defendant Helm would frequently bring B.B. drinks, coffee, and food.

23.     That Defendant Helm further purchased inappropriate gifts for B.B., including purchasing a pair of Ugg boots valued at over $100.00.

24.     That Defendant Helm's relationship with B.B. became so inappropriate that he was observed flirting with her on multiple occasions and his interest in her became well known around the high school.

25.     That Defendant Helm further bragged to students about spending $140

per week in candy that he kept in his room, which he used to lure students to his classroom.

26.    That during the weekend of November 2, 2024, Defendant Helm attempted to ingratiate himself with a group of male students and drove multiple boys to toilet paper a house.

27.    That on or about November 8, 2024, Principal Joseph Birkmeier and Athletic Director Steve Perryman met with and questioned Defendant Helm regarding his involvement in said inappropriate activities.

28.    That subsequent thereto, Defendant Helm sent a message to a student involved, cursing at him, and apparently blaming him for Defendant Helm's then ongoing troubles.

29.    That on or about November 10, 2024, Defendant Helm sent an email to Principal Birkmeier and Mr. Perryman, expressing toubling beliefs and statements.

30.    That for instance, Defendant Helm opposed any questioning of his relationship with the students, "Respectfully I am frustrated by the questioning of my relationship with the kids and being too 'friendly.'"

31.    That as another example, Defendant Helm insisted that the students were adults, when they are children, ". . . these are young adults, not 10 year old children. . . ."

32.    That Defendant Helm further appeared to not see anything wrong with

a teacher taking students to toilet paper a house, "I know as a admin you are put into certain situations and spots that you have to address it and maybe tping is the gray area that I may have pushed a boundary on but with all validity behind the idea of it. . . ."

33.    That on or about November 11, 2024, Defendant Helm was immediately sent home after he admitted to sending the above-referenced inappropriate message to the student.

34.    That on or about November 13, 2024, Mr. Perryman provided Defendant Helm notice that he had been suspended without pay for a period of two weeks or until November 26, 2024.

35.    That in said notice, Mr. Perryman reminded Defendant Helm that his actions "directly contrast with the expectations I have clearly communicated that our coaches do not act as friends with our students, do not engage in private messages, and do not engage in social media connections with our athletes."

36.    That on or about November 15, 2024, Defendant Helm ran into another student, C.C., also a minor, at a grocery store and inappropriately discussed his discipline.

37.    That during said conversation, Defendant Helm bragged about how "they" tried to get rid of him and promised that he would be returning to school.

38.    That later that evening, on or about November 15, 2024, Defendant

Helm looked up C.C. on SnapChat and added her as a friend.

39.    That Defendant Helm used SnapChat, a messaging and video/photo sharing app, to have inappropriate conversations with underage girls and did so, in part, because SnapChat automatically deletes most messages and/or videos after they have been viewed by the recipient.

40.    That by using SnapChat, Defendant Helm sought to benefit from the perceived difficulty in preserving evidence of his inappropriate messages.

41.    That Defendant Helm proceeded to send inappropriate messages to C.C., eventually sexually harassing her.

42.    That after Defendant Helm added C.C., he messaged her asking that she not tell anyone what he told her at the grocery store.

43.    That Defendant Helm's messages began morning salutations but quickly became more sexual.

44.    That as examples of Defendant Helm's behavior, C.C. received messages such as the following:

    (a)    That Defendant Helm would make comments about how C.C. intrigued him;

    (b)    That Defendant Helm would make statements that he thought C.C. was "hot" and would ask her what she thought about him; and

    (c)    That Defendant Helm would tell her that when she was eighteen (18) she should let him know, suggesting that at that point they could have a more sexual relationship and engage in sex acts.

45.     That on or about November 17, 2024, A.A. and her boyfriend broke up.

46.     That subsequent thereto, Defendant Helm learned of A.A.'s break-up.

47.     That on or about November 19, 2024, Defendant Helm messaged C.C., stating that he was going to add A.A. on SnapChat and talk to her about her breaking up with her boyfriend.

48.     That subsequent thereto, Defendant Helm found and added A.A. on SnapChat.

49.     That Defendant Helm proceeded to discuss A.A.'s relationship with her former boyfriend.

50.     That while messaging A.A., Defendant Helm instructed her not to tell anyone that they were texting or messaging.

51.     That Defendant Helm would state to A.A. that she and C.C. treated him like a friend.

52.     That Defendant Helm would further request both A.A. and C.C. to send him photographs of themselves.

53.     That when A.A. and C.C. would send photographs, Defendant Helm would become upset if the photographs did not show their faces and would request photographs depicting their face.

54.     That Defendant Helm would also frequently ask A.A. what she thought

about him and, when she would state that she thought of him as a teacher, he would state that it did not matter and that he knew he was "hot."

55.     That Defendant Helm increasingly discussed how he thought A.A. was "hot."

56.     That eventually, Defendant Helm became extremely vulgar and sexual.

57.     That after Defendant Helm became very forward about his sexual feelings for A.A., A.A. and C.C. recorded some messages Defendant Helm sent A.A.

58.     That one such message reads as follows:

Imagine this, I leave the gym right now and we meet up.  Plan is to just meet up and chat but the second we get there you take a look at me and I take a look at you and we can't keep our hands off each other.  It starts with slow kissing but quickly escalates.  I put my hand around your throat.  Grab your hair put it back and yank it back and spit in your mouth.  I then start ripping your clothes off starting from your shift and wrapping my mouth around those big perky tits of yours and slowly work my way down till your pants are off.  I then eat you out to where you are begging me not stop.  You yell to me keep going daddy.  At that point my animal is unleashed and I work my way back up I tell you to get on your knees and I whip my big dick out as it lands on your face.  I tell you to suck daddy's big dick as I pull your hair back.  we start off slow then I slowly take control and go faster.  You get it nice and wet for daddy until I pick you up throw you around pull your hair back and slide my dick into your tight wet pussy.  I start slow then fuck you till you're screaming.  Right at the point of cumming I'm gonna pull out turn you around. . . .

59.     That another message Defendant Helm sent A.A. read as follows:

Idk what you want me to do.  I want you, I want to fuck you, I want to help you forget about [ex-boyfriend's name redacted] I think your bad as fuck.  I've exposed myself lol

60.     That in video Defendant Helm sent A.A., he made comments along the lines of:

> Sorry that was aggressive, but I don't care.  I'm very horny right now, probably shouldn't tell you that, but I am.  So. . . Thanks, you did it to me.

61.     That in another video Defendant Helm sent to A.A., he made comments along the lines of:

> I could bring out my kinky side but I don't know.  I don't know if you deserve that.  You could see it, but it'd take a minute for me to be able to do it for ya.

62.     That on or about November 22, 2024, Defendant Helm continued to sexually harass and groom A.A. by purchasing her Ugg boots.

63.     That on or about November 26, 2024, Defendant Helm sent A.A. pornographic, nude photographs of his genitals.

64.     That during Defendant Helm's sexual harassment and other criminal behavior towards A.A., other students were beginning to learn of Defendant Helm's actions and were starting to discuss it at school.

65.     That on one such occasion, Defendant Helm heard students talking about it and demanded that they stop talking about it as other teachers might overhear.

66.     That Defendant Helm began blaming a male student for causing the chatter about his behavior and appeared to be attempting to separate or cause riffs

between said male student and his friends, A.A. and C.C.

67.    That also on or about November 26, 2024, Defendant Helm temporarily blocked A.A. on SnapChat but added A.A. back before she knew that she had been blocked.

68.    That Defendant Helm sent A.A. a lengthy message about others discovering his behavior towards A.A.

69.    That Defendant Helm demanded A.A. promise not to tell anyone about his messages.

70.    That Defendant Helm further offered to bribe C.C. with Ugg boots if she would stop talking about his messages.

71.    That Defendant Helm further demanded A.A. copy and paste messages he typed up in SnapChat for her to text him, making it appear that his messages and sexual harassment was just "rumors."

72.    That Defendant Helm unconvincingly attempted to use the false messages from A.A. to help him deny engaging in said sexual harassment and criminal behavior.

73.    That fearing discovery of his predatory and criminal behavior, Defendant Helm also asked A.A. to reach out to B.B., because he wanted to be "friends," but he was really trying to make sure B.B. did not disclose his inappropriate behavior.

74. That on or about November 27, 2024, an individual submitted a tip to OK2Say, Michigan's student safety program, which allows individuals to confidentially report tips on potentially harmful or criminal behavior directed at students, regarding Defendant Helm's sexual harassment of and criminal behavior towards A.A.

75. That said tip specifically claimed that Defendant Helm had been "sexting" a student.

76. That after receiving the OK2Say tip, Birch Run Area Schools did not terminate Defendant Helm's employment.

77. That instead and to protect Defendant Helm, Birch Run Area Schools permitted Defendant Helm to resign from his employment on December 1, 2024.[1]

78. That Birch Run Area Schools made it appear as if it was conducting an investigation in statements to parents and the public; however, the District was privately informing Plaintiff that it would not be conducting an investigation.

79. That on or about December 3, 2024, Beth Eaves, District Title IX Coordinator, wrote Plaintiff, acknowledging the OK2Say tip providing that Defendant Helm "allegedly engaged in conduct that may constitute unlawful discrimination, harassment, or retaliation" as defined under District policies against

---

[1] Amid students disclosing Defendant Helm's disgusting behavior, Defendant Helm was attempting to obtain substitute teaching permits from other school districts, and on November 25, 2024, received daily substitute teaching permits from Bay-Arenac ISD and Tuscola ISD.

A.A.

80.     That Ms. Eaves further communicated that the District would not be conducting an investigation because it had permitted Defendant Helm to resign.

81.     That Ms. Eaves specifically stated:

Because the respondent, Alex Helm, is no longer employed by the District, a Title IX investigation is not being opened at this time. The matter has been referred to the police who are conducting an investigation.

82.     That on or about the very next day, December 4, 2024, Joe Birkmeier, Birch Run High School Principal, told parents and the public that the District became aware of the inappropriate communications and "began immediately investigating these allegations."

83.     That Birch Run Area Schools falsely made it appear it was taking action when it had failed to investigate Mr. Helm.

84.     That Defendant Helm's actions, taken in his official and individual capacities, constitute violations of the right to be free from sexual harassment in the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

85.     That Defendant Helm's actions constitute sex discrimination in violation of Article III of the Michigan Elliott-Larsen Civil Rights Act.

86.     That Defendant Helm's actions constitute sex discrimination in violation of Article IV of the Michigan Elliott-Larsen Civil Rights Act.

87.     That Defendant Helm's actions constitute sex discrimination in

violation of the Michigan Equal Accommodations Act.

88.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain economic damages, including compensatory and consequential damages.

89.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, and disruption of lifestyle.

90.    That Plaintiff hereby claims the costs of this action, reasonable attorney fees, and expert fees pursuant to 42 U.S.C. § 1988.

91.    That Plaintiff hereby claims punitive damages.

92.    That Plaintiff hereby claims the costs of litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

93.    That Plaintiff hereby claims treble damages pursuant to M.C.L. § 750.147.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## <u>COUNT I – SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. § 1983</u>

94.     That Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 93 of her Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

95.     That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by the Constitution shall be liable to the injured party at law or in equity.

96.     That the Equal Protection Clause of the Fourteenth Amendment affords students the right to be free from intentional discrimination and sexual harassment.

97.     That Minor A.A. was sexually harassed by Defendant Helm.

98.     That Minor A.A. was a member of a protected class by virtue of her sex, female.

99.     That Minor A.A. was subject to sexual harassment that included, but was not limited, communications of a sexual nature, requests for photographs, sending of extremely vulgar depictions of sexual fantasies, and sending pornographic photographs.

100.    That Minor A.A. was subjected to unwelcomed sexual harassment.

101.    That said sexual harassment was based on her sex.

102.    That said sexual harassment had the effect of unreasonably interfering with her school performance and created an intimidating, hostile, or offensive

educational environment that affected seriously her psychological well-being.

103.    That Defendant Helm's actions served no legitimate pedagogical justification.

104.    That Defendant Helm's actions were not aimed to meet any legitimate objective.

105.    That Defendant Helm's actions were not used to maintain or restore discipline.

106.    That Defendant Helm's actions were done for his own sexual gratification.

107.    That Defendant Helm is not entitled to qualified immunity.

108.    That Minor A.A.'s right to be free from sexual harassment was clearly established.

109.    That Defendant Helm's actions were motivated by evil motive or intent and/or involved reckless or callous indifference to the federal protected rights of Minor A.A.

110.    That Defendant Helm's actions, taken in his official and individual capacities, constitute violations of the right to be free from sexual harassment in the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

111.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain economic damages,

including compensatory and consequential damages.

112.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, and disruption of lifestyle.

113.    That Plaintiff hereby claims the costs of this action, reasonable attorney fees, and expert fees pursuant to 42 U.S.C. § 1988.

114.    That Plaintiff hereby claims punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – SEXUAL HARASSMENT IN VIOLATION OF ARTICLE III OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

115.    That Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 93 of her Common Allegations and paragraphs 94 through 114 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

116.    That Article III of the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for a person to "[d]eny an individual the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of . . . sex. . . ." M.C.L. § 37.202(a).

117. That a "place of public accommodation" includes an "educational facility" open to the public. See M.C.L. § 37.2301(a).

118. That a "public service" includes "a public facility" owned, operated, or managed by a political subdivision of the State of Michigan. M.C.L. § 37.2301(b).

119. That at all times material hereto, Birch Run Area School's facilities were a place of public accommodation or a public service.

120. That the Act further provides that "discrimination because of sex" includes "sexual harassment." M.C.L. § 37.2103(k).

121. That "sexual harassment" includes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" where "[t]he conduct or communication has the purpose or effect of substantially interfering with an individual's . . . public accommodations or public services . . . or creating an intimidating, hostile, or offensive . . . public accommodations[ or] public services . . . environment." M.C.L. § 37.2103(k)(*iii*).

122. That Defendant Helm denied Minor A.A. the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Birch Run Area Schools' place of public accommodation and/or public service by sexually harassing Minor A.A.

123. That Minor A.A. was a member of a protected class by virtue of her sex, female.

124. That Minor A.A. was subject to sexual harassment that included, but was not limited, communications of a sexual nature, requests for photographs, sending of extremely vulgar depictions of sexual fantasies, and sending pornographic photographs.

125. That Minor A.A. was subjected to unwelcomed sexual harassment.

126. That said sexual harassment was based on her sex.

127. That Defendant Helm's sexual harassment had the purpose or effect of substantially interfering with Minor A.A.'s public accommodations or public services and created an intimidating, hostile, and offensive public accommodations or public service environment.

128. That Defendant Helm's actions served no legitimate pedagogical justification.

129. That Defendant Helm's actions were not aimed to meet any legitimate objective.

130. That Defendant Helm's actions were not used to maintain or restore discipline.

131. That Defendant Helm's actions were done for his own sexual gratification.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

132. That Defendant Helm's actions constitute sex discrimination in violation of Article III of the Michigan Elliott-Larsen Civil Rights Act.

133. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain economic damages, including compensatory and consequential damages.

134. That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, and disruption of lifestyle.

135. That Plaintiff hereby claims the costs of litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – SEXUAL HARASSMENT IN VIOLATION OF ARTICLE IV OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

136. That Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 93 of her Common Allegations, paragraphs

94 through 114 of Count I, and paragraphs 115 through 135 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

137.   That Article IV of the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an educational institution to "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex. . . ."  M.C.L. § 37.2402.

138.   That an "educational institution" includes a public institution, such as a secondary school, as well as "an agent of an educational institution."  M.C.L. § 37.2401.

139.   That at all times material hereto, Birch Run Area Schools operated educational institutions and employed Defendant Helm as a coach and long-term substitute teacher.

140.   That at all times material hereto, Defendant Helm satisfied the definition of "educational institution" as set forth in the Act.  M.C.L. § 37.2401.

141.   That the Act further provides that "discrimination because of sex" includes "sexual harassment."  M.C.L. § 37.2103(k).

142.   That "sexual harassment" includes "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature" where "[t]he conduct or communication has the purpose or effect of substantially interfering with an individual's . . . education . . . or creating an

intimidating, hostile, or offensive . . . educational . . . environment." M.C.L. § 37.2103(k)(*iii*).

143.   That Defendant Helm discriminated against Minor A.A. in the full utilization of or benefit from the Birch Run Area Schools, or the services, activities, or programs provided by Birch Run Area Schools by sexually harassing Minor A.A.

144.   That Minor A.A. was a member of a protected class by virtue of her sex, female.

145.   That Minor A.A. was subject to sexual harassment that included, but was not limited, communications of a sexual nature, requests for photographs, sending of extremely vulgar depictions of sexual fantasies, and sending pornographic photographs.

146.   That Minor A.A. was subjected to unwelcomed sexual harassment.

147.   That said sexual harassment was based on her sex.

148.   That Defendant Helm's sexual harassment had the purpose or effect of substantially interfering with Minor A.A.'s public accommodations or public services and created an intimidating, hostile, and offensive public accommodations or public service environment.

149.   That Defendant Helm's actions served no legitimate pedagogical justification.

150.   That Defendant Helm's actions were not aimed to meet any legitimate

objective.

151.   That Defendant Helm's actions were not used to maintain or restore discipline.

152.   That Defendant Helm's actions were done for his own sexual gratification.

153.   That Defendant Helm's actions constitute sex discrimination in violation of Article IV of the Michigan Elliott-Larsen Civil Rights Act.

154.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain economic damages, including compensatory and consequential damages.

155.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, and disruption of lifestyle.

156.   That Plaintiff hereby claims the costs of litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with

any and all legal and/or equitable relief this Court deems just.

## COUNT IV – SEXUAL HARASSMENT IN VIOLATION OF
## THE MICHIGAN EQUAL ACCOMMODATIONS ACT

157.   That Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 93 of her Common Allegations, paragraphs 94 through 114 of Count I, paragraphs 115 through 135 of Count II, and paragraphs 136 through 156 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

158.   That the Michigan Equal Accommodations Act provides:

Any person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . on account of . . . sex . . . and shall be liable to the injured party, in treble damages sustained, to be recovered in a civil action. . . .

M.C.L. § 750.147.

159.   That at all times material hereto, and as noted above, Birch Run Area Schools was and is a place of public accommodation.

160.    That at all times material hereto, Defendant Helm was an employee or agent of Birch Run Area Schools.

161.   That Defendant Helm denied Minor A.A. the accommodations, advantages, facilities, and privileges of the Birch Run Area Schools by sexually harassing Minor A.A.

162.   That Minor A.A. was a member of a protected class by virtue of her sex, female.

163.   That Minor A.A. was subject to sexual harassment that included, but was not limited, communications of a sexual nature, requests for photographs, sending of extremely vulgar depictions of sexual fantasies, and sending pornographic photographs.

164.   That Minor A.A. was subjected to unwelcomed sexual harassment.

165.   That said sexual harassment was based on her sex.

166.   That Defendant Helm's sexual harassment had the purpose or effect of substantially interfering with Minor A.A.'s public accommodations and created an intimidating, hostile, and offensive public accommodations environment.

167.   That Defendant Helm's actions served no legitimate pedagogical justification.

168.   That Defendant Helm's actions were not aimed to meet any legitimate objective.

169.   That Defendant Helm's actions were not used to maintain or restore discipline.

170.   That Defendant Helm's actions were done for his own sexual gratification.

171.   That Defendant Helm's actions constitute sex discrimination in

violation of the Michigan Equal Accommodations Act.

172.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain economic damages, including compensatory and consequential damages.

173.   That as a direct and proximate result of Defendant's unlawful actions, Plaintiff's Minor has sustained and will continue to sustain non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, humiliation, embarrassment, nervousness, anxiety, depression, and disruption of lifestyle.

174.   That Plaintiff hereby claims treble damages pursuant to M.C.L. § 750.147.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>April 25, 2025</u>        By:        <u>*/s/ Victor J. Mastromarco, Jr.*</u>
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, JANE DOE as Next Friend of A.A., a Minor, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demand a trial by jury on all the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>April 25, 2025</u>          By:     <u>*/s/ Victor J. Mastromarco, Jr.*</u>
                                                VICTOR J. MASTROMARCO, JR. (P34564)
                                                KEVIN J. KELLY (P74546)
                                                Attorneys for Plaintiff
                                                1024 N. Michigan Avenue
                                                Saginaw, Michigan 48602
                                                (989) 752-1414
                                                vmastromarco@mastromarcofirm.com
                                                kkelly@mastromarcofirm.com